AO 106 (Rev. 04/10) Application for a Search Warrant

AUSA Jonathan Grey

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

white IPhone IMEI 359260065804459 ATF item 773040-17-0088-142
IPhone model A1332 ATF item -143 white IPhone ATF item -145
white IPhone ATF item -162 rose IPhone ATF item -164
White IPhone ATF item -168

Case No. 2:19-mj-111

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the —— Southern —— District of —— Ohio ——, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC 2313 | Receipt and possession of stolen vehicles |
| Title 18 USC 1028 | Fraud in connection with identity theft |
| Title 21 USC 841 | Possession with intent to distrubute a controlled substance |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Samuel Chappell ATF TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/07/2019

*Judge's signature*

City and state: Columbus, Ohio

Magistrate Judge Deavers
*Printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Samuel Chappell, Task Force Officer, ATF, being duly sworn, depose and say that I am one of the Lead Investigators in this investigation. I have consulted with the other Lead Investigators regarding this investigation and have probable cause to believe the following is true, based on the investigation to date:

## INTRODUCTION

I am a Columbus Ohio Police officer assigned as a Task Force Officer with the bureau of Alcohol Tobacco and Firearms. The Columbus Division of Police has employed me since 2007. My responsibilities as a Task Force Officer include the investigation of violent criminal street gangs, narcotics traffickers, money launderers, and fraud and firearm related crimes. I have participated in the execution of search warrants and arrests related to the above-referenced offenses. By virtue of my experience and training, I am familiar with money laundering techniques utilized by individuals involved in illegal activities, such as narcotics trafficking and the interstate transportation of stolen items. I know that it is common for people involved in these types of illegal activities to accumulate large sums of U.S. currency that they seek to launder in order to avoid detection of their illegal activities, and attempt to freely spend the cash without drawing law enforcement scrutiny. I know that individuals that illegally transport stolen items are also commonly involved in multiple other types of fraudulent activities designed to conceal the source of their stolen property and the maintenance of storage locations.

    a. Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators;

Based on our ongoing investigation, your affiant believes probable cause exists to find that **Douglas BERRY**, and others, are engaged in a large scale conspiracy involving the interstate transportation of stolen high dollar vehicles, narcotics distribution, false statements on loan applications, and money laundering, identity theft, and that **Precious SIMLEY** is involved in bank fraud, identity theft, and money laundering.

Your affiant believes that evidence and instrumentalities of these crimes can be found in the white IPhone IMEI 359260065804459 ATF item -142, IPhone model A1332 ATF item -143, white IPhone ATF item -145, white IPhone ATF item -162, rose IPhone ATF

item -164, white IPhone ATF item -168 (herein referred to as Devices) recovered during a search of 641 Preston Trail Drive, Pickerington, Ohio 43147.

## PURPOSE OF AFFIDAVIT

Your affiant submits there is probable cause to believe that evidence of criminal activity, namely criminal violations of the federal criminal code (Title 18), including § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information) § 2313 (Receipt of Stolen Vehicles) and (Title 21) §841 (Possession with intent to distribute a controlled substance) are located inside of cell phones recovered from 641 Preston Trail Drive Pickerington, Ohio 43147.

Because this affidavit is offered for the limited purpose of establishing probable cause in support of this warrant, it does not set forth all facts known to this investigation.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

White IPhone IMEI 359260065804459 ATF item -142, IPhone model A1332 ATF item - 143, white IPhone ATF item -145, white IPhone ATF item -162, rose IPhone ATF item - 164, white IPhone ATF item -168

## ITEMS TO BE SEIZED

See Attachment B.

## PROBABLE CAUSE

1. The information in this affidavit is a compilation of information developed during the ongoing criminal investigation that started in 2017 of the above-described violations. The investigation has been conducted by investigators of the ATF, Columbus Police, DEA, and Ohio State Highway Patrol. Investigators' knowledge is derived from their own personal observations and from a variety of credible sources, including witness interviews; review of bank records, credit reports, public records, police reports, flight records, wire transfers, surveillance, and information provided to them by other law enforcement and regulatory personnel. This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all investigators' knowledge of the investigation into this matter.

2. Your affiant believes the investigation to date shows that **Douglas BERRY, Precious SIMLEY** and others, are engaged in criminal offenses including a largescale conspiracy involving the interstate trafficking and possession of stolen high dollar vehicles, identity theft, fraud, and trafficking in narcotics.

### SEARCH OF 641 PRESTON TRAIL DRIVE, PICKERINGTON OHIO, 43147

3. On or about January 22, 2019 a Federal search warrant 2:19-MJ-56 (Attachment C) was executed 641 Preston Trail Drive, Pickerington Ohio, 43147. 641 Preston Trail Drive is the residence of **BERRY** and **SIMLEY**.

4. During the search of the residence a firearm, marijuana, unknown white powder, jewelry, over $395,000 in US Currency, two glass tables with hidden compartments (identical to the table described in Attachment C paragraph 34), phones, records, and multiple different identification cards and social security cards not in the name of **BERRY** or **SIMLEY**.

5. On or about February 2, 2019 investigators conducted a search of the Columbus Police records for reports relating to the identification cards found inside of 641 Preston Trail Drive.

6. Columbus Police Report #175007300 detailed a theft of Ms. Tenayla Israel wallet. Ms. Israel's ID card was stolen in July of 2017. The card was found inside of 641 Preston Trail Drive.

7. An ID for Briana Milton was found inside of 641 Preston Trail Drive. A Columbus Police Report #165004432 detailed an attempted purchase of furniture at Value City in the Columbus area using Ms. Milton's identity. Investigators contacted Ms. Milton. She stated that her purse was stolen while she was shopping in Atlanta Georgia. Ms. Milton added that her identity had been used for a medical procedure in Miami Florida as well as the Value City in Columbus Ohio. Ms. Milton stated that she has never been to Ohio.

Your affiant believes probable cause exists that **BERRY, SIMLEY** and others are engaged in a largescale conspiracy involving the interstate trafficking and possession of stolen high dollar vehicles and controlled substances. They are also engaging in fraud in connection with identity theft. Your affiant further believes that evidence and instrumentalities of these criminal activities can be found in the devices recovered from 641 Preston Trail Drive, Pickerington, Ohio in the possession of **BERRY** and **SIMLEY**.

## TECHNICAL TERMS

1.    Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c.   Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that

are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

2.     Based on my training, experience, and research, I know that the Devices may have capabilities that allow them to serve as "a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

Through my experience and my discussions with other experienced law enforcement officers, I am familiar with the methods, schemes, and operations used by individuals involved with large-scale criminal activity including the possession and trafficking of stolen vehicles, and fraud and identity theft offenses and know that individuals take steps to mask their illegal proceeds of such activities, the identities and location of participants, victims, and inculpatory evidence. I am also aware that individuals engaged in fraud and large scale trafficking of stolen property offenses sometimes utilize firearms to protect their illegal property and proceeds.

In view of the above mentioned facts and my training and experience in the investigation of financial crimes, I have probable cause to believe that contained within the devices recovered from 641 Preston Trail Drive Pickerington Ohio, 43147 is evidence of:

    a.  18 USC 2313 –Receipt and Possession of Stolen Vehicles
    b.  18 USC 1028 – Fraud in Connection with Identity Theft
    c.  21 USC 841 – Possession with Intent to Distribute a Controlled Substance

FURTHER AFFIANT SAYETH NAUGHT.

Samuel Chappell
Task Force Officer ATF

Subscribed to and sworn before me this _____ day of February 2019.

HONORABLE _____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF OHIO

7

## Attachment A

IPhones recovered from 641 Preston Trail Drive, Pickerington, Ohio.

1. white IPhone IMEI 359260065804459 ATF item -142
2. IPhone model A1332 ATF item -143
3. white IPhone ATF item -145
4. white IPhone ATF item -162
5. rose IPhone ATF item -164
6. white IPhone ATF item -168

## Attachment B

### Items to be Seized

1. All records on the devices described in Attachment A that relate to violations of code (Title 18), including § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information), § 2313 (Receipt of Stolen Vehicles), (Title 21) §841 (Possession with intent to distribute a controlled substance) and crimes unknown at this time, including:
2. lists of contacts, call logs, and call history
3. All messages including but not limed to voice, SMS, text, and MMS
4. SIM and/or SD cards for each device
5. All stored data to include passwords, encryption keys, access codes, SIM passwords, files, programs, ring tones,
6. All pictures, videos, phone books, date books, call history, voice mail, e-mail and geographical information.
7. Any information relating to co-conspirators of the crime.
8. Any travel itineraries.
9. Any information contained in applications downloaded to the Devices
10. All bank records, checks, credit card bills, account information, and other financial records.
11. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.
12. All cellular related accessories not specifically mentioned herein.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

9

# ATTACHMENT C

*3 (Rev. 11/13) Search and Seizure Warrant*

AUSA' Kelley & Grey

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

2019 FEB -1 PM 2:44

UTHERN DIST. OHIO
'T. DIV. CLUMBUS

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

641 Preston Trails Drive Pickerington, Ohio 43147 and curtillidge of.

)
)
)
)
)
)

Case No. 2:19-mj-56

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ———— Southern———— District of ——————— Ohio ———.
*(identify the person or describe the property to be searched and give its location)*:

941 Preston Trails Drive Pickerington, Ohio 43147 and curtillidge of as depicted in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before  Feb. 1, 2019  *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to——————————— Any US Magistrate IN S.D. Ohio
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of ____

Date and time issued:  January 18, 2019 2:36 PM

City and state:    Columbus, Ohio

⁴ (Rev. 11/13) Search and Seizure Warrant (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 2:19-MJ-56 | 1-28-19 | DOUGLAS BERRY |

Inventory made in the presence of :

TFO ORICK

Inventory of the property taken and name of any person(s) seized:

SEE ATTACHED INVENTORY SHEETS

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 1-29-19

_____
Executing officer's signature

Samuel Chappell ATF TFO
Printed name and title

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Receipt for Property and Other Items**

| Page 1 of 4 | Case/Inspection Number T7304a-17-0088 | Case/Inspection Title | Office COLUMBUS |
|---|---|---|---|

Taken from: *(name, title, address, if appropriate)*
DOUGLAS BERRY / PRECIOUS STANLEY
641 PRESTON TRAIL DR PICKERINGTON OH

Recipient: *(name, title, address, if appropriate)*
TFO CHAPPELL

Location of Transfer or Seizure
SAME

Basis for Transfer or Seizure of Items:
FEDERAL SW

| Amount or Quantity | Description of Item(s) |
|---|---|
| 1 | MISC DOCS - KITCHEN |
| 2 | (1) WHITE IPHONE  IMEI 359260065804459  - KITCHEN |
| 3 | (1) IPHONE MODEL A1332 - KITCHEN |
| 4 | (1) NNU FLIP PHONE  SF12716000433 - KITCHEN |
| 5 | (1) IPHONE  WHITE IN BLACK CASE - BERRY |
| 6 | (1) DIAMOND  GMB ENT PENDANT - MASTER |
| 7 | (1) DIAMOND  AUDEMARS PIGUET  WATCH - MASTER |
| 8 | (1) GOLD WITH DIAMONDS  RAFAELL + CO  WATCH - MASTER |
| 9 | (1) DIAMOND  RICH SQUAD PENDANT  - MASTER |
| 10 | (1) DIAMOND  DOUG B  PENDANT - MASTER |
| 11 | (1) GOLD NECKLACE WITH  DIAMONDS - MASTER |
| 12 | (1) DIAMOND NECKLACE  - MASTER |
| 13 | (1) SMALL DIAMOND  GMB ENT  PENDANT - MASTER |
| 14 | (1) DIAMOND NECKLACE - MASTER |
| 15 | (1) GOLD  NECKLACE  WITH  DIAMONDS - MASTER |
| 16 | (1) SILVER + GOLD  ROLEX  WITH  DIAMONDS - MASTER |
| 17 | (1) SILVER NECKLACE  WITH  DIAMONDS - MASTER |
| 18 | (1) SQUARE DIAMOND  RING - MASTER |
| 19 | (1) SILVER DIAMOND  RING WITH BLUE BOX - MASTER |

I hereby acknowledge receipt of the above item(s) into my custody

| Received by: (signature) | Date 1-23-19 |
|---|---|
| Transferred by: (signature, if appropriate) | Date | Witnessed by: (signature) | Date |

GPO  U S GOVERNMENT PRINTING OFFICE 2009-349-481/41101

ATF Form 3400 23
Revised March 2005

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Receipt for Property and Other Items**

| Page 2 of 4 | Case/Inspection Number | Case/Inspection Title | | Office |
|---|---|---|---|---|

| Taken from: *(name, title, address, if appropriate)* | Recipient: *(name, title, address, if appropriate)* |
|---|---|

| Location of Transfer or Seizure | Basis for Transfer or Seizure of Items: |
|---|---|

| Amount or Quantity | | Description of Item(s) |
|---|---|---|
| 20 | 7 | DIAMOND EARRINGS WITH RED BOX - MASTER |
| 21 | 1 | SHOE BOX THAT CONTAINED 60,310 IN US CURRENCY - MASTER |
| 22 | 1 | WHITE IPHONE WITH CRACKED SCREEN AND BACK - STINLEY |
| 23 | 1 | BLACK LG PHONE 12CVLHO12 6328 - KITCHEN |
| 24 | 1 | ROSE IPHONE - DINNING ROOM |
| 25 | 1 | SONY HANDCAM - BASEMENT |
| 26 | 1 | SONY CYBERSHOT DIGITAL CAMERA - BASEMENT |
| 27 | 1 | MOTOROLA CELL PHONE IMEI 354 9970566 18C88 |
| 28 | 1 | WHITE IPHONE CRACKED SCREEN + BACK - MASTER |
| 29 | 1 | SANYO DIGITAL CAMERA - BASEMENT |
| 30 | 1 | PINK BLU PHONE - MASTER |
| 31 | 1 | BLUE BLU PHONE - MASTER |
| 32 | 1 | MINI SD 512MB CARD - BASEMENT |
| 33 | 2 | EXTERNAL HARD DRIVES |
| 34 | 7 | CD'S - MASTER |
| 35 | 5 | GEEK SQUAD COMPUTER SCANS. |
| 36 | 9 | CD'S |
| 37 | 12 | MASTERCARD PREPAID GIFT CARDS $560 TOTAL VALUE - |
| 38 | 1 | PINK HANDBAG WITH MISC DOCS |

I hereby acknowledge receipt of the above item(s) into my custody.

| Received by: *(signature)* | | | | Date 1-23-19 |
|---|---|---|---|---|
| Transferred by: *(signature, if appropriate)* | Date | Witnessed by: *(signature)* | | Date |

G²⁰ U.S. GOVERNMENT PRINTING OFFICE 2009-349-481/41101

ATF Form 3400. 23
Revised March 2005

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Receipt for Property and Other Items**

| Page 3 of 4 | Case/Inspection Number | Case/Inspection Title | Office |
|---|---|---|---|

Taken from: *(name, title, address, if appropriate)*

Recipient: *(name, title, address, if appropriate)*

Location of Transfer or Seizure

Basis for Transfer or Seizure of Items:

| Amount or Quantity | Description of Item(s) |
|---|---|
| 39 | (10) SD CARDS FROM PDUK HANDBAG |
| 40 | (2) THUMB DRIVES FROM PDUK HANDBAG |
| 41 | (3) ID's AND SOCIAL SECURITY CARDS FROM PDUK HANDBAG |
| 42 | (1) CANNON CAMERA WITH SD CARD |
| 43 | (1) BEST BANK VISA DEBIT 434 254 000 172 - BASEMENT |
| 44 | (1) MAC BOOK PRO W8923 MCUGGD - MASTER |
| 45 | (1) TOSHIBA LAPTOP 6622 95K - MASTER |
| 46 | MISC DOCS - UPSTAIRS BEDROOM |
| 47 | (1) BLUE JEWELRY BOX WITH MISC JEWELERY - MASTER |
| 48 | (2) BLACK BAGS WITH MISC JEWELRY - MASTER |
| 49 | (1) PURPLE BAG WITH MISC JEWELRY - MASTER |
| 50 | (1) AUTOMATED GADGETS MONEY COUNTER - MASTER |
| 51 | $60,310 IN US CURRENCY FOUND IN SHEATH |
| 52 | $66,118 IN US CURRENCY - MASTER |
| 53 | $635 IN US CURRENCY - UPSTAIRS BEDROOM |
| 54 | $269,970 IN US CURRENCY - GLASS TABLE BASEMENT |
| 55 | (1) COUNTERFEIT $10 BILL AND (1) COUNTERFEIT $20 + GLASS TABLE |
| 56 | $1,366 IN US CURRENCY - UPSTAIRS BEDROOM |
| 57 | (1) ROLEX BOX WITH ROLEX CARD - MASTER |

I hereby acknowledge receipt of the above item(s) into my custody.

Received by: *(signature)*

Date 1-23-19

Transferred by: *(signature, if appropriate)* | Date | Witnessed by: *(signature)* | Date

G2O U S GOVERNMEN* PRINTING OFFICE 2009-349-481/41131

ATF Form 3400 23
Revised March 2005

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Receipt for Property and Other Items

| Page 4 of 4 | Case/Inspection Number | Case/Inspection Title | Office |
|---|---|---|---|

Taken from: *(name, title, address, if appropriate)*

Recipient: *(name, title, address, if appropriate)*

Location of Transfer or Seizure

Basis for Transfer or Seizure of Items:

| Amount or Quantity | Description of Item(s) |
|---|---|
| 58 | MISC DOCUMENTS FROM RANGE ROVER |
| 59 | MISC DOCUMENTS — LAUNDRY ROOM |
| 60 | MISC DOCUMENTS — UPSTAIRS HALL CLOSET |
| 61 | MISC DOCUMENTS — MASTER |
| 62 | KRYPTALL BOX |
| 63 | 2014 RANGE ROVER SAL GS2TF0EA182793 |

SLC

I hereby acknowledge receipt of the above item(s) into my custody.

Received by: *(signature)*

Date 1-23-19

Transferred by: *(signature, if appropriate)* | Date | Witnessed by. *(signature)* | Date

ATF Form 3400. 23
Revised March 2005

Application for a Search Warrant

AUSA Kelley & Grey

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
641 Preston Trails Drive Pickerington, Ohio 43147 and curtilidge of.

)
)
)
)
)
)

Case No. 2:19-mj-56

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

641 Preston Trails Drive Pickerington, Ohio 43147 and curtilidge of. Further described in Attachment A

located in the ———— Southern ———— District of ———— Ohio ————, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2313 | Trafficking, Possession and Receipt of Stolen Vehicles |
| 18 U.S.C. 371 | Conspiracy |
| 21 U.S.C. 841 | Possession with intent to distribute a controlled substance |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Samuel Chappell ATF TFO

Sworn to before me and signed in my presence.

Date: _____07/19/2018_____

City and state: Columbus, Ohio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Samuel Chappell, Task Force Officer, ATF, being duly sworn, depose and say that I am one of the Lead Investigators in this investigation. I have consulted with the other Lead Investigators regarding this investigation and have probable cause to believe the following is true, based on the investigation to date:

## INTRODUCTION

I am a Columbus Ohio Police officer assigned as a Task Force Officer with the Bureau of Alcohol Tobacco and Firearms. I have been employed by the Columbus Division of Police since 2007. My responsibilities as a Task Force Officer include the investigation of violent criminal street gangs, narcotics traffickers, money launders, and firearm related crimes. I have participated in the execution of search warrants and arrests related to the above-referenced offenses. By virtue of my experience and training, I am familiar with money laundering techniques utilized by individuals involved in illegal activities, such a narcotics trafficking and the interstate transportation of stolen items. I know that it is common for people involved in these types of illegal activities to accumulate large sums of U.S., currency that they seek to launder in order to avoid detection of their illegal activities, and attempt to freely spend the cash without drawing law enforcement scrutiny.

Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators;

Based on our ongoing investigation, your affiant believes probable cause exists to find that **Douglas BERRY**, and others, are engaged in a large scale conspiracy involving the interstate transportation of stolen high dollar vehicles, narcotics distribution, false statements on loan applications, and money laundering, and that **Precious SIMLEY** is involved in bank fraud and money laundering. Your affiant further believes that evidence and instrumentalities of this activity can be found in the known residence of both **BERRY** and **SIMLEY** located at: 641 Preston Trails Drive, Pickerington, Ohio 43147.

1

## PURPOSE OF AFFIDAVIT

1. Your affiant submits there is probable cause to believe that evidence of criminal activity, namely criminal violations of the federal criminal code (Title 18), including § 371 (Conspiracy), § 1014 (False Statements of Loan and Credit applications), § 1344 (Bank Fraud), § 1956 (Money Laundering), § 1957 (Engaging in Monetary Transactions in Property derived from Specified Unlawful Activity) § 2313 (Receipt of Stolen Vehicles) and Title 21 § 841 (Possess with Intent to Distribute a Controlled Substance) are located at 641 Preston Trails Drive Pickerington , Ohio 43147.

2. Because this affidavit is offered for the limited purpose of establishing probable cause in support of this warrant, it does not set forth all facts known to this investigation.

## LOCATIONS TO BE SEARCHED

641 Preston Trails Drive, Pickerington, Ohio 43147 hereafter **PRESTON TRAILS TARGET RESIDENCE** further described in Attachment A

## ITEMS TO BE SEIZED

See Attachment B.

## PROBABLE CAUSE

3. The information in this affidavit is a compilation of information developed during the ongoing criminal investigation that started in 2017 of the above-described violations. The investigation has been conducted by investigators of the ATF, Columbus Police Department, DEA, and the Ohio State Highway Patrol. Investigators' knowledge is derived from their own personal observations and from a variety of credible sources, including witness interviews; review of bank records, credit reports, public records, police reports, flight records, wire transfers, surveillance, and information provided to them by other law enforcement and regulatory personnel. This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all investigators' knowledge of the investigation into this matter.

2

4. Your affiant believes the investigation to date shows that Douglas **BERRY** and Precious **SIMLEY** are involved in illegal activities consisting of Receipt of Stolen Vehicles (**BERRY** and **SIMLEY**)) Money Laundering (**BERRY** and **SIMLEY**), Engaging in Monetary Transactions in Property derived from Specified Unlawful Activity (**BERRY** and **SIMLEY**), Bank Fraud and False Statements of Loan and Credit applications (**SIMLEY**), and Possess with Intent to Distribute a Controlled Substance (**BERRY**).

5. **BERRY** was convicted in the Southern Judicial District of Ohio, case number 2:05CR231, of Conspiracy to distribute a controlled substance and possession of a controlled substance with intent to distribute a controlled substance. **BERRY** was sentenced to 151 months of incarceration. **BERRY** was released from Federal Prison on or about March 18, 2016. **BERRY** also has a conviction in Franklin County Common Pleas Court for Attempted Possession of Drugs. **SIMLEY** has been convicted in Hamilton County Ohio Common Pleas Court for Theft and Receiving Stolen Property. **BERRY** and **SIMLEY** are known to cohabitate and have a child together.

### GET MONEY BOYZ LLC & TAX RETURNS

6. On or about November 3, 2015, **BERRY** and **SIMLEY** formed an Ohio LLC, which was registered with the Ohio Secretary of State's Office under the name of GET MONEY BOYZ ENTERTAINMENT LLC. The purpose of which was to disguise the source of their illegal proceeds. They listed the purpose of the corporation simply as "entertainment". **SIMLEY** was listed as the registered agent for the LLC. Investigators obtained bank records from Huntington Bank for the account in the name of GET MONEY BOYZ ENTERTAINMENT, LLC. According to the bank signature card, the account was open on or about February 12, 2016 listing **BERRY** as the owner of the corporation and **SIMLEY** as the Co-CEO. A second account was opened on or about June 13, 2017, listing the same signatories. An analysis of the **BERRY – SIMLEY** related accounts reflect a large amount of cash deposits and many debit card transactions, which appear to be for personal expenses.

7. Your affiant has verified that GET MONEY BOYZ ENTERTAINMENT, LLC had no state tax return filing history from 2013 through September 6, 2017 with the Ohio Department of Taxation. Federal Tax return filing reflect GET MONEY BOYZ ENTERTAINMENT LLC. had no filing history for tax year 2015. A 2016 Form 1065 US Return of Partnership Income tax return was filed with the Internal Revenue Service. Below is a summary of the GET MONEY BOYZ ENTERTAINMENT LLC's reported income and expenses.

3

**2016**

| | |
|---|---|
| Gross Receipts | $82,065 |
| (less) | |
| Rent | $3606 |
| Depreciation | $40 |
| Advertising | $3890 |
| Auto & Truck Expense | $611 |
| Meals & Entertainment | $489 |
| Office Expense | $1508 |
| Parking Fees & Tolls | $82 |
| Printing | $1490 |
| Telephone | $885 |
| Travel | $3015 |
| Venues | $44,345 |
| Total Deductions | $59,963 |
| | |
| Ordinary Business Income | $22,102 |

8. Your affiant also obtained the Individual Federal tax filing history of both Douglas BERRY and Precious SIMLEY which are summarized below:

<u>DOUGLAS BERRY</u>

2013 and 2014: BERRY had no record of filing a federal tax return

<u>2015</u>

| | |
|---|---|
| Wages | $3,012 |
| Adjusted Gross Income | $3,012 |
| Earned Income Credit | $231* |

<u>2016</u>

| | |
|---|---|
| Partnership Distribution | $11,051 |
| (GET MONEY BOYZ ENTERTAINMENT LLC.) | |
| Adjusted Gross Income | $10,270 |
| Earned Income Credit | $352* |

4

PRECIOUS SIMLEY

2013, 2014, and 2015: SIMLEY had no record of filing a federal tax return

2016

| | |
|---|---|
| Partnership Distribution (GET MONEY BOYZ ENTERTAINMENT LLC) | $11,051 |
| Adjusted Gross Income | $10,270 |
| Earned Income Credit | $3,373* |

*The purpose of the **Earned Income Tax Credit** (EITC) is to reduce federal income and payroll taxes for workers with low to moderate incomes.

9. Your affiant also obtained the Ohio State tax filing history of both Douglas BERRY and Precious SIMLEY for tax year 2017 which are summarized below:

DOUGLAS BERRY

2017

| | |
|---|---|
| Total Business Income | $11,464.00 |
| Adjusted Gross Income | $9,998.00 |

PRECIOUS SIMLEY

| | |
|---|---|
| Total Business Income | $115,725.00 |
| Adjusted Gross Income | $107,549.00 |

10. SIMLEY and BERRY each had a Capital One Credit card. SIMLEY, from January 27, 2015 through November 27, 2017, charged approximately $882which included Automobile Rental Agency fees, Inmate phone calls, Greyhound Lines fees and other miscellaneous charges. BERRY, from June 23, 2016 through November 21,2017, charged approximately 2560 which included Restaurants, Gasoline, Nail Spa fees, Airline fees, and Automobile Rental Agency fees.

11. SIMLEY and BERRY obtained a loan from Citizens One Auto Finance in the amount of $46,820 with an approved loan dated on or about February 23, 2017. This was for

5

the purchase of a 2015 blue Chevrolet Corvette. According to the vehicle invoice, the total purchase price was $51,895. **SIMLEY** and **BERRY** put a $9,000 cash down payment on this vehicle. Their monthly payment on the Corvette was $758.80

12. **SIMLEY** obtained a loan from Huntington Bank in the amount of $55,927.24 with an approved loan dated of July 26, 2017. This was for the purchase of a 2015 Cadillac Escalade. According to the vehicle invoice, she put a $9,900 cash down payment on this vehicle. On her loan application, she states her income as $8,000 dollars a month ($96,000 per year) from GMB-ENT during the last two years (since July 2015). The GET MONEY BOYZ ENTERTAINMENT, LLC (GMB -ENT) corporate entity was not formed until November 3, 2015, and the business bank account was not established until February 12, 2016, making it unlikely she was deriving $8,000 a month since July 2015. Her reported income makes this a false loan application. Investigators also obtained State of Ohio income tax return information of both **SIMLEY** and **BERRY**. **SIMLEY**'s return information reflects she had not filed a State of Ohio tax return for 2015. For 2016, she reported an adjusted gross income of $10,270 and a low income tax credit of $88 dollars, which is not consistent with her Huntington Bank loan application. **BERRY**'s State of Ohio tax information reflects he had not filed tax returns for 2013 and 2014. **BERRY**'s 2015 adjusted gross income reflected $3012 and his 2016 adjusted gross income reflected $10,270.

13. On or about June 13, 2017, **BERRY** and **SIMLEY** opened a bank account in the name of GET MONEY BOYZ ENTERTAINMENT at the Huntington Bank (account number 04891890425). On this same date, a deposit of $59,000 in cash was made to this account by **SIMLEY**. On July 5, 2017, a $20,000 cash deposit was made to this account by **BERRY**. On July 27, 2017, a wire transfer in the amount of $65,674.42 was sent from the GET MONEY BOYZ ENTERTAINMENT Huntington Bank account number 04891890425 to First American Title Company. On or about August 2, 2017, **BERRY** and **SIMLEY** were listed in Franklin County Auditor's website for purchasing real property located at 1642 Vilardo Lane in Columbus, Ohio for $66,000 dollars. Your affiant is familiar with this method of attempting to create a legitimate purchase with illegally derived and or unsubstantiated proceeds.

14. On February 1, 2018, a trash pull was conducted at 8789 Linick Dr. in Reynoldsburg OH (at the time the known residence of **BERRY** and **SIMLEY**). Located during this trash pull was paperwork for **SIMLEY** documenting she receives Ohio WIC benefits as well as a home loan application for **BERRY**. Investigators discovered that **SIMLEY** filed for assistance benefits through the Ohio Department of Job and Family Services (ODJFS). Records from ODJFS indicate that **SIMLEY** filed paperwork during the years 2016-

2018. On or about March 29, 2016, **SIMLEY** signed a zero income declaration form. **SIMLEY** certified that she does not receive income from employment, operation of a business, rental income, or several other forms of income. On September 21, 2017, **SIMLEY** submitted a self-employment ledger that showed she worked 26 hours and made $400 in the month of August 2017.

15. Records from the Ohio Department of Jobs and Family Services indicate that **BERRY** filed for assistance benefits during the years 2016 and 2017. On or about January 18, 2017, **BERRY** signed a zero income declaration form. **BERRY** certified that he does not receive income from employment, operation of a business, rental income, or several other forms of income. **BERRY** submitted a self-employment ledger documenting an income of $435 in May of 2017, an income of $525 in June 2017, an income of $457.50 in July of 2017. **BERRY** listed his employer as GMB ENT LLC.

## STOLEN MOTOR VEHICLES

16. Investigators with the Ohio State Highway Patrol discovered a large high-end stolen vehicle network. Investigators found expensive vehicles with fraudulent ("washed") out of state titles or forged manufacture's certificate of origin (MCO) being transferred and then registered in Ohio. These vehicles, some with manufacturer suggested retail price (MSRP) over fifty (50) thousand dollars are being listed as sold for 1/2 to 1/3 of their MSRP. The washed out state titles originated from Alabama, Georgia, Kentucky, and Mississippi and have fictitious or cloned Vehicle Identification Numbers (VIN) on them. Investigators were able to verify the actual VIN on some of these vehicles and learned that all the vehicles were reported stolen from various states.

17. All vehicles are manufactured with a VIN specific to that vehicle marked on several locations on the vehicle. The most prominent position a VIN is located is driver's side dash board which is visible from outside the vehicle through the front window. A vehicle will have the VIN stamped or printed on several other locations, some of which are difficult for the thief to access and change.

18. Investigators are aware of several techniques used by criminals to make stolen vehicles appear legitimate. One of the techniques used is called cloning or vin flipping. Cloning is completed by taking the VIN number from a vehicle similar in make, model, and color to the stolen vehicle. The vehicle the VIN is taken from is commonly referred to as a donor vehicle. Criminals often find donor vehicle VINs listed in online auctions and at salvage yards. The criminal will then create a replica VIN plate and Federal Identification Decal (FID). They will then replace the true VIN number and FID on the stolen vehicle

7

with the donor VIN and FID. Often they will only replace the VIN visible on the dash board and the FID inside the driver's door. This will disguise the identity of the car enough to prevent proper identification by law enforcement.

19. To complete the process of legitimizing the stolen vehicle they will need to "wash" a legitimate title or create a forged title or manufacturer's certificate of origin (MCO). With washing, the criminal will obtain a title belonging to a different vehicle. Commonly they will obtain an out of state title. Washing the title consists of using chemicals or other methods to erase the correct information on the title. They will then replace the VIN and other key information belonging to the donor vehicle. Next, they will take this washed title to the Clerk of Courts and obtain a valid title for the stolen vehicle. With this valid title they can then register the vehicle and obtain valid license plates. With a forged title or MCO they can complete the same process as with a washed title to legitimize the stolen vehicle.

20. During the course of this investigation, a total of 18 suspected cloned/stolen vehicles have been identified. Fifteen of these vehicles have been located, confirmed stolen, and subsequently recovered. Twelve of the recovered vehicles were titled in Ohio with washed fraudulent out of state titles. Two of the recovered vehicles obtained Mississippi registrations using fraudulent documents and the remaining vehicle was recovered while it was in the process of being titled in Ohio using a washed title. Each of the titles and/or fraudulent documents submitted had a VIN that belonged to a different vehicle or were fictitious. Of the three vehicles which have not been located, two were titled in Ohio and one obtained a Mississippi registration using fraudulent documents. Investigators have obtained copies and examined the washed titles in this case. The titles all show clear signs of tampering. The titles have marks consistent with the original VIN on the document being erased and a new fraudulent VIN being typed in. Investigators then examined the VINs listed in the windshield of the recovered vehicles. The VINs listed in the windshields of the recovered vehicles were altered to match the fraudulent VINs on the washed titles. Investigators then looked at other locations on the vehicles and found the correct VIN. Tracing the VINs used on the washed titles investigators found that some of the VINs did not exist while others belonged to similar vehicles that had been listed in auctions. Most of these vehicles listed in auctions were salvaged or otherwise damaged.

21. On April 17, 2017, Mary Carter registered a white 2013 Porsche Panamera with a fraudulent Alabama title at the Franklin County Clerk of Courts - Title Division. Ohio State Highway Patrol investigators found that the VIN listed on the title actually comes back to a Porsche Panamera listed in a salvage auction in California. Investigators found that the real vehicle was sold and shipped out of the country. When contacted by

8

investigators Mary Carter told investigators that she titled the car for her sister Deandra Taylor and her son Kenneth Hill. Mary Carter stated that she met Taylor, Hill and a black male driving a "fancy blue car" at the title office to complete the transaction. A review of the surveillance video taken on April 17, 2017, from the title office shows a blue Corvette with a black stripe and black wheels. This distinctive vehicle matches the Corvette which was owned by **BERRY** at the time.

22. The Ohio State Highway Patrol voided the above issued title on the Porsche for being fraudulent. As a result of the title voiding, on August 25, 2017, Deandra Taylor titled a white 2013 Porsche Panamera with a fraudulent Mississippi title at the Franklin County Clerk of Courts Title Division. This VIN was different from the VIN listed on the fraudulent title Mary Carter used. This VIN actually belongs to a Porsche Panamera located in California. Surveillance video from the title office showed Deandra Taylor and her son Kenneth Hill in the parking lot. Kenneth Hill is observed in the parking lot speaking with someone seated in the driver's seat of a blue Corvette which also matched the same Corvette owned by **BERRY**. On September 23, 2017, investigators learned the Porsche Panamera was located through a traffic stop in the City of Toledo. During an inspection of the vehicle, it was found both the VIN and FID Label had been changed to reflect the fraudulent VIN number. When the vehicle's true identity was learned it was found to have been stolen in East Point, Georgia.

23. On June 26th, 2017, during a review of a title audit, a red Dodge Charger was found to be titled to Floyd Williams, who is a known associate of **BERRY**. The VIN used to title the Dodge Charger actually belongs to a 2016 Dodge Charger that was listed in a salvage auction in Missouri. Investigators checked and learned that the wrecked Dodge Charger with the real VIN was still damaged and located in Missouri. OSP investigators were able to determine fraudulent paperwork was used to obtain WILLIAM'S Ohio title for the Dodge Charger which indicates a high probability that the vehicle is stolen.

24. On or about September 21, 2017, investigators conducted a trash pull at the then known residence (8789 Linick Dr., Reynoldsburg, OH 43068) of **BERRY**. Investigators believed **BERRY** to be the distribution point for the stolen vehicles with cloned / fraudulent VINS. During this trash-pull, investigators found two discarded cellular phones. Both phones were "flip" style devices which had been broken apart. Text messages were retrieved by investigators from these phones. Messages were discovered between one of the discarded phones and a number with a California area code found to belong to Williams. The messages included discussion about a red Dodge Charger. On March 26, 2017, a message from the discarded phone stated that a red Dodge Charger was available for "25 bands" and had one thousand miles on it. On March 29, 2017,

Williams titled a 2016 red Dodge Charger with the State of Ohio reflecting a purchase price of $25,000 dollars and 1,070 miles listed on the odometer. The tax and fees for this vehicle were $1892.50, which Williams paid for in cash. Investigators learned Williams was living at a residence at 100 Alhambra Dr. in Irvine, California. The red Charger was observed at this address through images on social media and a physical observation made by members of the California Highway Patrol. It was further learned this address was being rented under a stolen identity and telephone calls between **BERRY** and the phone number of the fictitious renter were discovered. Shortly after the arrest of Floyd Williams in December of 2017 the vehicle was removed from his residence and has not been located again.

25. On July 5, 2017, investigators conducted a title audit through the Ohio Title database. During this audit, a 2014 Audi A8, titled to a Douglas **BERRY** was found to have been obtained through the use of a fraudulent Alabama title. This transaction occurred on April 22nd, 2017. The vehicle's VIN number was checked through the National Motor Vehicle Titling Information System (NMVTIS) and it was found the most recent title for this vehicle was issued in New Jersey in 2014. The state of Alabama did not have any record of this vehicle in their state. A check of the title number on the Alabama title revealed the title was actually assigned to a 1994 Ford. The VIN associated with the Audi was further checked and the vehicle was found to be a "total loss" salvage vehicle which was sold at a salvage auction in New York. When searching for the Ohio registration for the vehicle, it was determined the vehicle had been issued a temporary registration on June 29, 2017 to Miguel Palmer. The title history revealed **BERRY** sold this vehicle to Palmer for $18,000. This price is well below the Kelly Blue Book (KBB) price of $34,000 – $38,000. On June 11, 2018, investigators learned Palmer had been arrested for felony narcotics possession by the Columbus Division of Police. The Audi had been impounded and investigators conducted an identity inspection of the vehicle and found both the VIN and FID label had been counterfeited. The vehicle was properly identified and found to be a stolen vehicle from the State of Georgia.

26. On July 23, 2017, Columbus Police Officers observed a 2015 Audi A7 with Mississippi registration HVA799 being operated by Christopher ROBERTS. ROBERTS is a known associate of **BERRY** and Williams. A check of this registration revealed it was registered to Precious **SIMLEY**. The NMVTIS was checked for the VIN associated with this vehicle and no title or vehicle history could be located, which indicated the VIN does not exist. On the registration, **SIMLEY** listed an address of 6700 Medger Evers Blvd Jackson, Mississippi. A review was conducted of the documents provided by the Mississippi Department of Revenue and it was determined that **SIMLEY**'s submission was fraudulent. This application was submitted by **SIMLEY** on December 14, of 2016.

10

On March 9, 2018, Columbus Police officers impounded this vehicle. A search warrant was executed on the vehicle and during this search warrant, the VIN and FID labels were found to be counterfeit. The true identity was confirmed and the vehicle was found to have been stolen in the state of Georgia. Property including photos in the vehicle belonging to Floyd Williams was also found.

27. On August 1, 2017, investigators were conducting surveillance at 8789 Linick Dr. (the then residence of **BERRY** and **SIMLEY**) in Reynoldsburg, Ohio. Through the investigation, it was discovered the home was a rental property which was not being rented to either **BERRY** or **SIMLEY**. It was determined that the person listed as the renter was a victim of identity theft and the property was being rented in her name without her consent or knowledge. During this surveillance, a 2013 BMW X6 bearing Ohio registration GZM5814 was observed. A review of this vehicle's history was conducted and it was found this vehicle had received its Ohio title on January 12th, 2017 in the name of **SIMLEY**. In order for **SIMLEY** to obtain the Ohio title, she presented a Mississippi title. The Mississippi title was reviewed and several indicators showed the title had been "washed". A search was conducted through the NMVTIS and it was discovered the only title for the vehicle was the Ohio title issued to **SIMLEY**. A Mississippi title had not been issued with the associated VIN. The Mississippi title number was checked through NMVTIS as well, and did not return to any title issued in the state. It is further noted the VIN did not decode properly, indicating the number itself is fictitious. On the paperwork issued to the Franklin County Clerk of Courts, a purchase price of $18,000.00 was listed. This price is below the market value for this make and model. The KBB value for this vehicle, at its lowest condition with minimal options, shows the lowest private party sale value at $23,993.00 as of August of 2018. The value of this vehicle would have been higher in January of 2017 when the vehicle was titled in Ohio.

28. Throughout the course of the investigation, both **SIMLEY** and **BERRY** were observed operating the BMW X6 on numerous occasions. On August 17th, 2018, a search warrant was executed and the BMW was seized in an alley behind the residence of **SIMLEY**'s mother. It was found to have an altered VIN and FID label changed as well as having had several of the confidential numbers and anti theft labels removed. **SIMLEY** was interviewed on the phone and in person. She stated she purchased the vehicle from an unknown person on Craigslist. The vehicle was inspected and properly identified where it was found to be stolen from Union City, Georgia. **SIMLEY** stated she would provide what documentation she had but has not done so to this point.

29. On or about August 8, 2017, investigators observed a 2016 white Dodge Challenger bearing Ohio registration HFG2825 parked in the driveway at 8789 Linick Dr. in

11

Reynoldsburg, Ohio (the fraudulent obtained residence of **BERRY** and **SIMLEY**). A detailed review of this vehicle's title history showed numerous inconsistencies commonly observed with cloned vehicles. The Ohio title for this vehicle was obtained using a Mississippi title submitted to the Franklin County Clerk of Courts Title Division. This title also displayed indicators of title washing. This included inconsistent fonts and a review by the state of Mississippi who reported the title number did not exist. The VIN associated with this vehicle was found to have never been titled in the state of Mississippi. The true VIN was researched and found it was titled in Florida. The vehicle was listed as being salvaged, after it was involved in a crash, and sustained heavy damage. The Ohio title listed the vehicle for a purchase price of $18,000.00. KBB valued this same vehicle at $36,289.00. It should be noted this was for the lowest condition with no additional options.

30. On August 10, 2018, a search warrant was executed at a storage unit being rented by **BERRY**. Located inside the storage unit was the Challenger. The VIN and FID label had been changed, however, after an inspection, the vehicle was properly identified and found to be stolen from the Atlanta GA area. Throughout the course of this investigation, investigators have observed **BERRY** and his brother, Dominic PRICE, operate this vehicle on numerous occasions. In the weeks leading up to the vehicle's recovery, it was found this vehicle's color had been changed from white to yellow with a vehicle body wrap. After the wrap was applied, the vehicle was placed into the storage facility.

31. On July 20, 2018, a search warrant was executed at 9264 Jackies Bend Dr. in Reynoldsburg at the residence of a known associate of **BERRY** identified as Norman Peterson. Investigators have linked Peterson to the sale or possession of five stolen vehicles. Also Investigators were able to determine that 9264 Jackies Bend Dr. was rented using a stolen identity. During the search of the property, a stolen 2014 Mercedes Benz CLS550 which had its VIN and FID label changed was found in the garage. It was determined this vehicle was stolen during a carjacking in Georgia. Also located were firearms and evidence of narcotics trafficking. Investigators found this property was rented under a stolen identity established by the same female connection **BERRY** has used at other properties rented in the names of identity theft victims. After Peterson's arrest, this connection contacted **BERRY** in an attempt to locate Peterson. It should be further noted, during surveillance, **BERRY**, was observed going to 9264 Jackies Bend Dr. on multiple occasions. During one of these visits, **BERRY** parked his vehicle in the garage. Peterson has been charged in The Southern Judicial District of Ohio Federal Court case 2:18CR146 with possession of a firearm by a convicted felon.

## NARCOTICS ACTIVITIES

32. On November 16, 2017, investigators observed **SIMLEY** and **BERRY** at 7743 Astra Circle in Reynoldsburg along with Williams and Roberts. Investigators found this residence was also a rental property being rented with a stolen identity.

33. Through surveillance, **BERRY** was found to have made a stop at a Stor-All storage unit 469 located at 4080 E. Main St. in Columbus on November 30, 2017. Later the same day a vehicle belonging to **BERRY** traveled to 7743 Astra Circle. A search warrant was obtained on December 1, 2017 for Stor-All storage unit 469. Inside the unit two large empty shipping crates and empty packaging for two duffel bags were located. Shipping labels were located and found to have been damaged. Investigators have learned that Miguel Palmer had shipped large crates from a storage facility located in Moreno Valley, California to the Stor-All Self Storage unit 469 in Columbus, OH on at least two occasions. On or about October 26, 2017, Palmer shipped two crates weighing approx. 560 lbs. to the Stor-All unit. The contents of the crate were listed as tables. On or about November 27, 2017 Palmer shipped one crate at approximately 335 lbs. to the unit. These crates were consistent with the crates found inside the unit during the federal search warrant executed on December 1, 2017.

34. On or about May 8, 2018, investigators conducted a search warrant on a crate shipped from Ohio to California by Palmer. Investigators intercepted the crate in Columbus Ohio. Investigators found a glass table inside of the crate. It was determined that the table had a secret compartment or "trap" inside of it. Investigators opened the compartment and found approx. $45,000.00 in US currency in a sealed plastic bag and a GPS tracking device inside. The compartment smelled strongly of marijuana. Investigators believe that the table with the hidden compartment was being utilized to ship narcotics from California to Ohio and to ship US Currency from Ohio to California.

35. On December 1, 2017, investigators observed Williams at 7743 Astra Circle leaving with another vehicle following him from the address. Williams arrived at 3296 E. 7th Ave and took a large bag into apartment "C". Once he exited the apartment, Williams threw a different red bag into a dumpster. The bag was retrieved and narcotics packaging consistent with kilogram size packages was located. A search warrant was conducted and a bag consistent with the bag Williams was observed carrying was located. Inside the bag were three kilograms of fentanyl. Investigators also found nearly $24,000 in cash and three firearms. A search warrant was also obtained for 7743 Astra Circle and narcotics related materials, a firearm, and over $62,000 in cash was seized. Williams and a co-defendant Wydell Cobb have been charged in The Southern Judicial District of Ohio

13

Federal Court case 2:18CR2 with possession of a controlled substance with intent and conspiracy to distribute a controlled substance.

36. Investigators also learned **BERRY** and **SIMLEY** traveled to Atlanta, Georgia by car on this date where they remained for a short time before returning on December 2, 2017. During this return, **BERRY** was stopped for a traffic violation where he informed the officers he went to Kings Island in Warren County, Ohio to look at the holiday lights and was returning due to an ill child at home.

37. On or about June 11, 2018 a federal search warrant was conducted at 3788 Waderidge Trail, Groveport Ohio, 43125 the residence of **BERRY** associate Miguel Palmer. During a search of the residence, investigators found a loaded firearm, marijuana, and approximately 470 grams of carfentanil. Palmer has been charged in The Southern Judicial District of Ohio Federal Court case 2:18CR157 with possession of a controlled substance with intent to distribute.

## PRESTON TRAILS TARGET RESIDENCE

38. On or about April 9, 2018, **SIMLEY** and **BERRY** purchased a home **PRESTON TRAILS TARGET RESIDENCE** for $360,000. **SIMLEY** and **BERRY** made a down payment on the property of $34,150. Investigators have observed vehicles registered to **SIMLEY** and **BERRY** parked in the driveway of the **PRESTON TRAILS TARGET RESIDENCE** after they purchased this home on a regular basis.

39. A trash pull was conducted at **BERRY**'s residence at **PRESTON TRAILS TARGET RESIDENCE** on May 11, 2018. During this trash pull, latex gloves, a cut open food saver bag, and discarded green cellophane were located. This material is consistent with packaging of narcotics. These items were subsequently submitted to the Ohio State Highway Patrol Crime Lab for analysis. Also located with these items was a dry cleaning ticket with **BERRY**'s name on it. On December 17, 2018, the laboratory analysis of these items was completed. The latex glove was found to contain trace amounts of methamphetamine and the food saver bag contained tetrahydrocannabinol also known as marijuana.

40. In October of 2018, investigators executed search warrants on the Facebook and Instagram accounts of multiple suspects involved in this case, including **BERRY** and **SIMLEY**.
During a review of **SIMLEY**'s account, direct messages were found between **SIMLEY**

14

and Vanessa **Barron**. Investigators have determined the source of establishing the rental properties using stolen identities was **Barron**. Within these messages, **SIMLEY** and **Barron** discuss properties **BERRY** has "ordered" for rent. **SIMLEY** also asks **Barron** for the password for the rental property account at 8789 Linick Dr. in Reynoldsburg and **Barron** provides it. **SIMLEY** also asks for the security verification and **Barron** responds she'll have to look in her "old notes".

41. During a review of **BERRY**'s Instagram, multiple photos of large sums of US Currency, high value vehicles purchased by **BERRY**, and photos of **BERRY** and **SIMLEY** wearing apparently expensive jewelry were observed. He also has a direct messaging discussion with an individual subsequently identified as Christopher McGowan from Los Angeles, California. In these messages, they initially discuss Williams owing McGowan money and how **BERRY** is under investigation. **BERRY** tells him what Williams had going on has "nothing to do with what y'all had going on I gave you my bands". Five months later in July of 2018, **BERRY** asks McGowan "can I get mines dam you just forgot about my lil 22 bands". After this message, **BERRY** tells McGowan he'll be out there in a couple weeks to see him. From experience, investigators believe that the term "band" refers to a stack of money totaling $1,000.

42. Also in **BERRY**'s Instagram account, he has direct messaging with an individual identified as Harold Porter. **BERRY** is arguing with Porter about a vehicle and $10,000 owed by Porter to **BERRY**. Porter shows **BERRY** a screenshot of two bank accounts belonging to Porter totaling what appears to be over a million dollars. He also shows **BERRY** a large stack of US Currency which is set in numerous rubber banded stacks with a white piece of paper held in front of the currency. The paper has a hand written date of July 9th, 2018 and the number 58 written at the bottom possibly indicating the number of stacks of currency. From the photo, it appears the stacks are several feet high, by several feet wide, by several feet deep. Porter informs **BERRY** his "lil 10 bands somewhere in there!"

43. **Barron**'s Instagram, direct messaging between **BERRY** and Barron where they discuss completing rental property orders for **BERRY** in Las Vegas was obtained and reviewed. **BERRY** selects a property at 2020 Grafton Ave. in Henderson, Nevada. According to the Clark County Nevada Auditor's Office, this property is valued at $430,000. **BERRY** also discusses other properties he wants Barron to establish for his associates and asks what name and date of birth the properties would be rented under as well as sending money orders for payment for rent and utilities.

44. A cooperating source (hereby identified as CS-1) stated **BERRY** can get high-end stolen

15

vehicles and paperwork which he sells for 1/3 of the actual cost of the vehicle. CS-1 stated he/she was going to buy a vehicle offered for sale by **BERRY**. CS-1 believes the vehicles are coming from Atlanta Georgia. CS-1 stated he believes **BERRY** is getting the cars and selling them for cheap because they are "flipping" the vehicle identification number. (flipping is another term used to mean cloning a VIN).

45. CS-1 further stated **BERRY** is engaged in bulk narcotics trafficking buying and selling multiple kilos at a time. CS-1 stated **BERRY** primarily deals in "powder" which is commonly identified as cocaine. CS-1 reported **BERRY** has a female connection who can set up houses for people under different names for a $2000.00 fee. The connection handles the rental agreements/paperwork/keys and can provide properties anywhere in the country. Investigators were able to verify much of the information provided by CS-1.

46. A second cooperating source (hereby referred to as CS-2) provided information regarding **BERRY**. CS-2 stated he purchased a vehicle from **BERRY**. CS-2 stated he didn't know the vehicle was stolen but **BERRY** specifically told him not to take it to a dealership for service. Investigators know when a vehicle is taken to a dealership for service or repairs, the on-board computer is checked and the VIN is verified. Investigators know that individuals involved with stolen vehicles are also aware of this. This vehicle was later recovered and verified as stolen.

47. CS-2 stated **BERRY** supplied him with narcotics in 2018. CS-2 stated **BERRY** provided the narcotics around a specific date. Surveillance observed CS-2 and **BERRY** conclude a meeting in a parking lot around the date given by CS-2. CS-2 stated this meeting is when the narcotics transaction occurred. Investigators were able to verify much of the information provided by CS-2.

48. A third cooperating source (hereby referred to as CS-3) was interviewed. CS-3 purchased a vehicle from **BERRY**. **BERRY** told CS-3 not to take the vehicle to a dealership. CS-3 reported **BERRY** has a connection who would set up houses under different identities. CS-3 stated these houses were used as "trap" houses where narcotics would be received and distributed as well as homes where people could live without detection. CS-3 stated **BERRY** has a female connection who would handle all the paperwork for $1,500 and the key would be at the residence when they showed up. CS-3 reported **BERRY** is involved in large-scale narcotics trafficking. Investigators were able to verify much of the information provided by CS-3.

16

49. Since **BERRY** and **SIMLEY**'s move to their residence located at **PRESTON TRAILS TARGET RESIDENCE** (approximately April of 2018), police have received at least one complaint of unusual activity occurring at the residence by neighbors.

## PROPERTY & VEHICLES OWNED BY BERRY AND SIMLEY

50. The known currently or recently registered vehicles of **BERRY** and **SIMLEY** are listed below:

   a. A 2013 BMW X-6 acquired by Precious **SIMLEY** on or about January 11,2017. This vehicle was determined to be a cloned/stolen vehicle which has been subsequently recovered. According to the Ohio title received by **SIMLEY**, she paid $18,000 for the vehicle with an additional $1,350 in taxes. There was no lien for the vehicle. [1]

   b. A 2016 Dodge Challenger acquired by Douglas **BERRY** on or about August 23, 2017. This vehicle was determined to be a cloned/stolen vehicle which has been subsequently recovered. According to the Ohio title received by **BERRY**, he paid $18,000 for the vehicle with an additional $1,350 in taxes. There was no lien for the vehicle.

   c. A 2014 Land Rover-Range Rover acquired by **SIMLEY** on or about June 6, 2018. This vehicle is still owned by **SIMLEY** and **BERRY**. The purchase price for this vehicle was $56,900 with an additional $3,840 in sales tax. There is no lien on the vehicle.

   d. A 2011 GMC Savanna (custom conversion van) was acquired by **BERRY** on or about July 10, 2018. **BERRY** purchased this vehicle for $30,660. **BERRY** made a down payment of $8000 in cash and financed the remainder of the purchase price. This vehicle is still owned by **BERRY** and **SIMLEY**, however, it is currently in the possession of a known associate of **BERRY**. This associate has a criminal history of narcotics trafficking.

   e. A 2017 Jaguar F-Pace was acquired by **BERRY** on or about September 18, 2018. **BERRY** utilizing the business name Get Money Boyz Entertainment purchased this vehicle lien free for $49,922. The sales tax was an additional $3744.

---

[1] * The 2013 BMW and the 2016 Dodge were both previously listed on State of Mississippi titles before being transferred to SIMLEY and BERRY respectively. The titling and transferring of these vehicles is consistent with previously recovered vehicles that were determined to be stolen vehicles and the titling procedures for stolen vehicles as set forth in this affidavit.

17

This vehicle is no longer titled to **BERRY**.

    f.   A 2016 Maybach (Mercedes Benz Luxury brand) was acquired on or about October 1, 2018. **SIMLEY** and **BERRY** purchased this vehicle for $103,809. **BERRY** made a down payment of $32,000 and traded in his 2015 Chevrolet Corvette for which he received a net credit of $2,670. This vehicle is still owned by **BERRY** and **SIMLEY**.

    g.   A 2009 Mercedes Benz G Class (Brabus) was acquired by **BERRY** for $18,000 with no lien on November 6, 2018. The vehicle is listed as a rebuilt salvage. The sales tax for this purchase is listed as $1,350. It should be noted the seller of the vehicle titled the vehicle on September 7th, 2018 and the vehicle had a purchase price of $32,088. Investigators found the vehicle was damaged at the time of this purchase and it appears to have been repaired prior to being sold to **BERRY**. From this finding, it is believed **BERRY** paid more than the $18,000 listed on his title. This vehicle is still owned by **BERRY** and **SIMLEY**.

    h.   A 2015 Chevrolet Corvette was purchased on February 23, 2017 for $51,895 by **BERRY** and **SIMLEY**. The sales tax was an additional $3,892.13. There was a lien for this vehicle. This vehicle was traded in during the purchase of the 2016 Maybach.

    i.   A 2015 Cadillac Escalade was purchased for $51,689.00 on July 26, 2017 by **BERRY** and **SIMLEY**. The sales tax was $3,876.68. The vehicle did have a lien on it. On or about August 23, 2018, **SIMLEY** traded the 2015 Cadillac Escalade back to a local dealership. Since more was owed on the vehicle than its actual value a $15,945. payment in cash was made to the dealership for the difference in valuation.

    j.   A 2011 Lexus RX350 was purchased for $12,807.49 on November 8, 2018. The sales tax listed is $864.51. There is no lien on this vehicle. **BERRY** and **SIMLEY** currently own this vehicle.

    k.   A 2014 Audi A8 was acquired by **BERRY** on April 22, 2017. This vehicle was determined to be a cloned/stolen vehicle which has been subsequently recovered. According to the Ohio title received by **BERRY**, he paid $23,000 for the vehicle with an additional $1,725 in taxes. There was no lien for the vehicle.

51. On or about July 12th, 2018 **BERRY** acquired a property located at 2258 W. Majestic Drive Columbus, Ohio for a recorded purchase price of $72,000. This property was purchased mortgage free.

52. On or about November 30, 2018 **BERRY** and **SIMLEY** purchased 637 Creekpark Ct Blacklick, Ohio 43004 for $156,050. Investigators were unable to find a lien on the property indicating that it was purchased mortgage free.

53. **BERRY** posted this picture of himself on Social media on approximately September 18, 2018 wearing what appears to be tens of thousands of dollars worth of jewelry. Investigators have found correspondence between **BERRY** and others discussing the jewelry and insuring his jewelry as well as postings of additional jewelry pictures. Investigators have also observed through correspondence, social media postings, and receipts/packaging located in trash pulls, **BERRY** and **SIMLEY** routinely purchase and wear high value designer clothing and accessories. Furthermore, investigators have found **BERRY** and **SIMLEY** routinely take trips to various destinations and events across the United States which appear to be expensive in nature. These trips would include floor seats at the NBA Eastern Conference Finals, the NBA All-Star Weekend in Los Angeles, California, as well as multiple trips to Las Vegas and to other venues. Based upon these facts, **BERRY'S** post and the fact that **SIMLEY** who names herself on social media as _mypassion responses "My Property" your affiant believes probable cause exists that this is **BERRY'S** and **SIMLEY'S** jewelry purchased by **BERRY** and/or **SIMLEY** and is not costume jewelry.



19

54. **BERRY** and **SIMLEY**'s combined reported adjusted gross income for the period of 2013 to 2017 is approximately $141,099. Your affiant believes probable cause exists that **BERRY** and **SIMLEY** did not have sufficient legitimate income to support their living expenses and accumulation of wealth. From 2015 to the present **BERRY** and **SIMLEY** have expenditures for vehicles and real estate of over $400,000 alone. The $400,000 does not include groceries, clothing, utilities bills, travel, entertainment, or the cost of the jewelry worn by **BERRY** in the above photo. Based upon the facts set forth in this affidavit you affiant believes probable cause exists that this money originated from the receipt and sale of high-end stolen vehicles and/or illegal narcotics distribution.

## CONCLUSION

Through my experience and my discussions with other experienced law enforcement officers, I am familiar with the ways in which individuals involved with illegal activities who are laundering their illicit proceeds in an attempt to appear to have legitimate income such as Douglas **BERRY** and Precious **SIMLEY** conduct their business, and their methods of laundering the proceeds of their illegal activities. I am familiar with the methods, schemes, and operations used by those individuals involved with large scale criminal activity and know:

    a. It is my experience that currency transactions including withdraws, deposits, and transfers that are conducted enable those individuals involved with large scale criminal activity and money launderers to invest the cash proceeds of their illicit businesses into an asset, thereby legitimizing the currency;

    b. That those individuals involved with large scale criminal activity including the trafficking of stolen property, identity theft, and narcotics trafficking are known to trade items in their possession for items of monetary value;

    c. That those individuals involved with large scale criminal activity conduct various transactions, including the purchase of vehicles and real estate, in order to create an appearance that their income is derived from legitimate sources;

    d. That those individuals involved with large scale criminal activity must maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing criminal enterprise;

    e. That those individuals involved with large scale criminal activity and money launderers maintain books, records, receipts, notes, ledgers, and other papers relating to the sale of stolen vehicles, and the purchase of assets, including vehicles and real estate and other financial instruments;

    f. That the aforementioned books, records, receipts, notes, ledgers, etc., are

20

commonly maintained where the individuals have ready access to them, i.e., homes, businesses, and automobiles;

g. That it is common for those individuals involved with large scale criminal activity and money launderers to secrete proceeds of their criminal sales, and records of illicit transactions, sources, and customers, in secure locations within their residences, businesses, garages, storage buildings, and safety deposit boxes for ready access, and also to conceal such items from law enforcement authorities;

h. That persons involved in such criminal activity and laundering conceal caches of currency, financial instruments, precious metals, jewelry, other items of value and/or proceeds of illicit transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in their criminal activities, in their residences, businesses, garages, storage buildings, automobiles, and safety deposit boxes;

i. That those individuals involved with large scale criminal activity and money launderers commonly maintain addresses or telephone numbers in books, papers, pagers, or cellular phones (and often have multiple cellular phones and pagers) which reflect names, addresses, text messages to, and/or telephone numbers for their associates in the criminal organization, even if said items may be in code;

j. That those individuals involved with large scale criminal activity and money launderers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their product, and that these individuals usually maintain these photographs in their residences, businesses, and automobiles;

k. That when those individuals involved with large scale criminal activity and money launderers amass large monetary proceeds from the sale of their ill-gotten gains, they attempt to legitimize these profits by utilizing foreign and domestic banks and their attendant services, including securities, cashier's checks, money drafts, wire transfers, letters of credit, brokerage houses, real estate, shell corporations, business fronts, and other methods;

l. That those individuals involved with large scale criminal activity and money launderers sometimes store documents and records relating to their co-conspirators, customers, money, and assets on computer hardware and software, the contents of which frequently yield evidence of their criminal activity and money laundering crimes;

m. That courts have recognized that unexplained wealth is probative evidence of criminal activity in which transactions involving large amounts of cash and high profit margins are common, to include those individuals involved with large scale

21

criminal activity;

n.   That it is common for those individuals involved with large scale criminal activity and money launderers to conceal and store items related to their criminal activity and money laundering within safes, footlockers, boxes, containers and other hidden compartments, and within places that they own or over which they exercise control such as residences, businesses, and automobiles;

o.   Individuals involved with large-scale criminal activity store records of associated criminal acquisition/disposition documents at their residences, businesses, and/or in their vehicles.

p.   Individuals involved with large-scale criminal activity and money laundering create fictitious businesses and legal entities. These fictitious businesses and legal entities are used to conceal their criminal activity and legitimize their illegal proceeds.

In view of the above mentioned facts and my training and experience in the investigation of financial crimes, I have probable cause to believe that contained within **PRESTON TRAILS TARGET RESIDENCE** is evidence of:

a.   18USC- 371-Conspiracy;

b.   18USC-1014-False Statements of Loan and Credit applications;

c.   18 USC-1344-Bank Fraud;

d.   18 USC-1956 - Laundering of Monetary Instruments;

e.   18USC-1957-Engaging in Monetary Transactions in Property derived from Specified Unlawful Activity;

f.   18 USC 2313 -Receipt of Stolen Vehicles;

g.   21USC-841-Possess with Intent to Distribute a Controlled Substance.

FURTHER AFFIANT SAYETH NAUGHT.

Samuel Chappell
Task Force Officer ATF

Subscribed to and sworn before me this 18th day of 2019.

HONORABLE
UNITED STATES MAGISTRATE JUDGE

23

## Attachment A

### Location to be Searched

641 Preston Trails Drive Pickerington, Ohio 43147 is described as grey sided with a stone front, two-story single family home with an attached garage. The numbers "641" are clearly marked to the left of the garage door. The front of the home is depicted in this photograph:



## Attachment B

## Items to be Seized

Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items will be found at 641 Preston Trails Drive Pickerington, Ohio 43147.

1. Books, records, notes, ledgers, and other papers relating to the transportation, purchase, distribution, packaging, and sale of controlled substances, stolen vehicles and stolen identities , which may be maintained in either paper form or on computers, computer disks, CS-ROM disks, DVD disks, portable storage devices, or other related equipment;

2. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other records related to the receipt, expenditure and concealment or other disposition of income, which may be maintained in either paper form or on computers, computer disks, CS-ROM disks, DVD disks, portable storage devices, or other related equipment, relating to the distribution of controlled substances, stolen vehicles and stolen identities.

3. Books, papers, documents and information contained within cellular phones and electronic organizers reflecting names, addresses, telephone numbers, and other contact or identification information of participants in drug trafficking, stolen vehicles and stolen identities.

4. Cash, currency, currency counters, financial instruments, and records relating to controlled substances/stolen vehicle income and expenditure of proceeds of drug transactions and stolen vehicles, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking and stolen vehicle activities;

5. Cellular phones, computers, tablets, electronic organizers, laptops, and other electronic communication devices belonging to Douglas **BERRY** and/or Precious **SIMLEY**;

6. Photographs, and videotape of participants in drug trafficking/stolen vehicle activities, and of property acquired from the sale of controlled substances, stolen vehicles, or money laundering;

7. Bank and other financial institution records consisting of savings, loans, records of deposits, statements, letters of credit, money orders, cashier checks, passbooks, cancelled checks, certificates of deposit, lease agreements, customer account information, income and expense summaries, cash disbursement journals, financial statements, state and federal income tax returns, information related to the receipt and other disposition of income, and related financial information pertaining to the purchase, lease, sale or other disposition of real or personal property, including real estate, automobiles, jewelry, and furniture;

8. United States currency, automobiles, precious metals, jewelry, and financial instruments, as well as books and records regarding the acquisition, use and disposition of such items of value;

9. Safe deposit box lease agreements and safe deposit keys;

10. Proof of residency, including but not limited to cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents and keys: and

11. Any safes, vaults, or secured storage equipment that could secret any of the above listed items, and the contents therein.

12. Stolen vehicles being utilized by or readied for sale by **BERRY**, **SIMLEY** and/or their associates.

13. Money counters and other instrumentalities used to count or store bulk currency.